UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SPORTSINSURANCE.COM, INC.,

                          Plaintiff,

     -against-                                    8:20-CV-0403 (LEK/DJS)

THE HANOVER INSURANCE
COMPANY, INC.,

                          Defendant.

---

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Sportsinsurance.com, Inc. brings this action against Defendant The Hanover Insurance Company, Inc. Dkt. No. 2 ("Complaint"). In the Complaint, Plaintiff asserts the following causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) violation of New York General Business Law ("GBL") § 349. Id. at 10–12. Plaintiff also seeks declaratory judgment. Id. at 13.

Now before the Court is Defendant's motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted. Dkt. No. 5 ("Motion"). Plaintiff opposes the Motion. Dkt. No. 9 ("Response"). Defendant filed a reply to the Response. Dkt. No. 10 ("Reply").

For the reasons discussed below, the Court grants the Motion in part and denies it in part.

## II.      BACKGROUND

### A.  Factual History

The following facts, which the Court assumes to be true at this stage, are taken from the Complaint.

#### 1.  *The Parties and the Policy*

Plaintiff operates an internet-based brokerage business specializing in the sale of sports insurance products to teams, leagues, and events. Compl. ¶ 9. Plaintiff is incorporated in Delaware, has its principal place of business in New York, and conducts its administrative and technical operations from Montréal, Québec. Id. ¶ 1.

Defendant is an insurance company incorporated in New Hampshire with headquarters in Massachusetts. Id. ¶ 2. Defendant issued a commercial crime insurance policy to Plaintiff. Compl. ¶ 5; Dkt. No. 5-2 (the "Policy").

#### 2.  *The Theft*

In November 2014, Plaintiff hired Kenza El Baroudi as its vice president of finance and chief financial officer. Compl. ¶ 11. Her duties included managing Plaintiff's payroll, collecting its receivables, and paying its payables. Id. ¶ 15. El Baroudi was "entrusted with the day to day operations of the business[.]" Id. ¶ 13.

El Baroudi embezzled $250,036.30 CAD by: (1) writing checks to herself in excess of her salary; (2) writing checks to Groupe Baroudi Kenza Inc. ("GBK"), El Baroudi's accounting business; and (3) forging the signature of one of Plaintiff's principals on a new employment agreement for herself reflecting higher pay, "or procuring such signature by fraudulent means." Id. ¶¶ 17–18. Plaintiff failed to detect the fraud because El Baroudi "utiliz[ed] various

transactions for smaller sums of money" and because it was "unsure of its expenses and financial obligations, which was part of the reason [El] Baroudi was hired." Id. ¶¶ 19–20. In January 2016, Plaintiff learned of El Baroudi's thefts and terminated her. Id. ¶ 21.

### 3. The First Insurance Claim

On April 12, 2016, Plaintiff notified Defendant under the Policy of a potential loss related to El Baroudi. Id. ¶ 23. Plaintiff submitted a sworn proof of loss, signed by executive Mark Di Perno, on April 26, 2016. Id. ¶ 24. On July 7, 2016, Plaintiff amended the proof of loss. Id. Defendant's counsel informed Plaintiff's counsel on January 24, 2017 that it was denying Plaintiff's claim. Id. ¶ 26.

### 4. The Canadian Lawsuit

El Baroudi sued Plaintiff "and others for unpaid salary and other sums claimed due" in Superior Court of Québec, and Plaintiff countersued El Baroudi and GBK. Id. ¶ 29. On July 25, 2019, the Québec court dismissed El Baroudi's claims and awarded Plaintiff a judgment against El Baroudi in the amount of $250,387.62 CAD, plus interest and costs. Id. ¶ 30. The Québec court found that El Baroudi misappropriated $290,387.62 CAD from Plaintiff but offset that sum by $40,000 CAD, which the court found to be the fair cost of services GBK provided Plaintiff. Id. ¶¶ 32–33.

### 5. The Second Insurance Claim

On October 25, 2019, Plaintiff's counsel submitted a second claim for indemnification to Defendant's counsel, which was also denied. Id. ¶¶ 36–37.

### B. Procedural History

Defendant removed this case from New York State Supreme Court, Essex County, to this Court on April 6, 2020. <u>See</u> Dkt. No. 1. On April 13, 2020, Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. <u>See generally</u> Mot.

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662–63 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249–50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." <u>Id.</u> at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief, and the action is subject to dismissal. <u>See Iqbal</u> at 678–79.

## IV.    DISCUSSION

### A. Extrinsic Evidence

As a preliminary matter, the parties dispute whether the Court may consider certain documents filed by Defendant in connection with the Motion.

With some narrow exceptions, the motion-to-dismiss stage is not an appropriate time for a defendant to submit evidence in an effort to contradict a plaintiff's allegations. A Rule 12(b)(6) motion concerns only the "legal feasibility" of a complaint, see Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006), and "challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence," Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). "The test of a claim's substantive merits is reserved for the summary judgment procedure, governed by Federal Rule of Civil Procedure 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule." Global Network Communs., Inc., 458 F.3d at 155 (internal quotation marks and alterations omitted).

In accordance with these principles, courts adjudicating Rule 12(b)(6) motions generally do not look beyond "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Concord Assocs., L.P. v. Entm't Props. Trust, 817 F.3d 46, 51 n.2 (2d Cir. 2016) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt Inc., 277 F. Supp.

2d 327, 330–31 (S.D.N.Y. 2003)). As an extension of the principle that a court may consider documents "incorporated by reference," a defendant is permitted to introduce a document that the plaintiff has not expressly incorporated by reference but that is nevertheless 'integral' to the complaint. See Goel, 820 F.3d at 559. A document is integral to the complaint, for this purpose, "where the complaint relies heavily upon its terms and effect." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global Network Communs., Inc., 458 F.3d at 157.

Under either of these two standards, a plaintiff's mere mention, limited quotation, or limited paraphrase of a document is not sufficient. See Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) ("The amended complaint merely discussed these documents and presented short quotations from them. Limited quotation does not constitute incorporation by reference.") (internal quotation marks omitted); Goel, 820 F.3d at 539 (noting with respect to the "integral" standard for documents not expressly incorporated by reference that "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotations' from the document is not enough") (quoting Global Network Communs., Inc., 458 F.3d at 156) (alterations omitted).

Additionally, "[e]ven where a document is considered 'integral' to the complaint . . . [i]t must . . . 'be clear that there exist no material disputed issues of fact regarding the relevance of

the document.'" Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016) (quoting

Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "This principle is driven by a concern that

a plaintiff may lack notice that the material will be considered to resolve factual matters." Id.

(citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

     With these principles in mind, the Court next analyzes the documents submitted by

Defendant to determine whether they may be considered in ruling on the Motion.

### 1. The Policy

     Defendant submitted the Policy with its Motion. See generally Policy. Plaintiff does not

appear to dispute that the Policy is properly before the Court. See Resp. at 7–8. The Court finds

that the Policy was incorporated by reference into the Complaint, and therefore may be

considered in ruling on the Motion. See Merritt Envtl. Consulting Corp. v. Great Divide Ins.

Co., No. 17-CV-7495, 2018 U.S. Dist. LEXIS 175527, at *14 (E.D.N.Y. Oct. 10, 2018) ("[I]n

the context of motion[s] to dismiss a coverage dispute, courts may consider the contents of an

insurance policy, whether or not the plaintiff attaches the policy as an exhibit to its

complaint.").

### 2. Coverage Correspondence

     Defendant also submitted five letters—three from Plaintiff's counsel to Defendant's

counsel and two from Defendant's counsel to Plaintiff's counsel—along with its Motion.

See Dkt. Nos. 5-3 (January 24, 2017 letter from Defendant's counsel to Plaintiff's counsel); 5-4

(April 10, 2017 letter from Plaintiff's counsel to Defendant's counsel); 5-5 (May 8, 2017 letter

from Defendant's counsel to Plaintiff's counsel); 5-6 (October 25, 2019 letter from Plaintiff's

counsel to Defendant's counsel); 5-7 (December 12, 2019 letter from Defendant's counsel to

Plaintiff's counsel). The Court will not rely on any of them in resolving the Motion.

Defendant argues that the letters of January 24, 2017, October 25, 2019, and December 12, 2019 are "specifically described in the Complaint" and therefore incorporated by reference. Reply at 6–7. However, Plaintiff has done nothing more than" merely mention[]" the existence of these documents. Goel, 820 F.3d at 559.

The same is true for the April 10, 2017 and May 8, 2017 letters. "A matter is deemed 'integral' to the complaint," and thus may be considered at the motion-to-dismiss stage, "when the complaint 'relies heavily upon its terms and effect.'" Palin v. New York Times Co., 940 F.3d 804, 811 (2d Cir. 2019) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153–54 (2d Cir. 2002)). Defendant argues these two letters "are integral to the allegation that [it] improperly claimed that [Plaintiff] intentionally misrepresented and concealed material facts regarding the Second Employment Agreement." Reply at 7. But this allegation merely forms the basis for one of three ways in which Defendant purportedly breached the implied covenant of good faith and fair dealing. See Compl. ¶ 55 ("Hanover unilaterally breached the covenant of good faith and fair dealing . . . by deliberately, carelessly and wrongfully: (a) mishandling the claim; (b) delaying payment of the claim; and (c) claiming without basis in fact that [Plaintiff] intentionally misrepresented and concealed material facts regarding an alleged Second Employment Agreement with [El] Baroudi."). This is not a sufficiently heavy reliance on these letters' "terms and effect" to render them "integral" to the Complaint. Palin, 940 F.3d at 811 (quoting Chambers, 282 F.3d at 153–54).

In sum, in ruling on the Motion, the Court will consider the Policy but not the correspondence submitted by Defendant.

**B. Merits**

 *1. Applicable Law*

The parties appear to assume New York law governs the interpretation of the Policy, as opposed to the law of Québec. See Mot. at 17 ("Under New York law, parties are permitted to agree in a written contract to a limitations period shorter than that prescribed by statute."); Resp. at 9–10 (citing limitations period case law from the New York Court of Appeals). The Policy is silent on the applicable law. See generally Policy.

Where the parties' briefs rely on New York law in a dispute over a contract that does not specify the governing law, the Second Circuit has found implied consent sufficient to establish choice of law. See Tehran-Berkeley Civil & Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989); see also Bennett v. Sterling Planet, Inc., 546 F. App'x 30, 33 (2d Cir. 2013) (summary order) ("In a diversity case, where the parties have agreed to the application of the forum law — as evidenced by reliance on that law in the parties' briefing, as in this case — their agreement ends the choice-of-law inquiry.").[1]

---

 [1] Courts cannot, in every case, apply the law of a jurisdiction to which the parties consent through their conduct in litigation while simultaneously abiding by New York choice-of-law principles. Under Tehran-Berkeley, parties could agree to apply the law of, say, Vatican City in their briefs, and a court would apparently be bound by their agreement—even in a case with no international connection. But New York courts hold that the correct law to apply in liability insurance cases is "generally . . . [that of] the jurisdiction 'which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other [jurisdiction] has a more significant relationship.'" Matter of Liquidation of Midland Ins. Co., 16 N.Y.3d 536, 544 (2011) (quoting Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 318 (1994)).

 As this Court recently noted, "the New York Court of Appeals, and not the Second Circuit, is the ultimate authority in the interpretation of New York state law." Jeffrey's Auto Body, Inc. v. State Farm Fire & Cas. Co., No. 20-CV-33, 2020 U.S. Dist. LEXIS 221011, at *30 (N.D.N.Y. Nov.

### 2. *Breach of Contract*

Condition 'm' of the Policy states that Plaintiff, the named insured, "may not bring any legal action against [Defendant] involving loss . . . [u]nless brought within 2 years from the date [Plaintiff] 'discovered'[2] the loss." Policy at 9. Because Plaintiff alleges in the Complaint that El Baroudi's "frauds and thefts were discovered" in January 2016, <u>see</u> Compl. ¶ 21, Defendant argues that this claim—filed in state court on March 6, 2020—is too late. <u>See</u> Mot. at 17. The Court agrees.

---

25, 2020) (Kahn, J.). And here, the Court must apply New York law. <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").

Applying the New York principle, it is not clear what the parties "understood . . . to be the principal location of the insured risk[.]" <u>Zurich Ins. Co.</u>, 84 N.Y.2d at 318. The Policy states that it "covers loss . . . taking place" both "within the United States of America . . . and Canada." Policy at 10. Plaintiff's principal place of business is in New York, and the loss allegedly took place in Essex County, New York. <u>See</u> Compl. ¶¶ 1, 4. But Plaintiff maintains a "back office" in Montréal, where El Baroudi was based. <u>See</u> <u>id.</u> ¶¶ 1, 10.

"[W]here it is necessary to determine the law governing a liability insurance policy covering risks in multiple states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk." <u>Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.</u>, 36 A.D.3d 17, 24 (App. Div. 3rd Dep't 2006); <u>see also</u> <u>Steadfast Ins. Co. v. Sentinel Real Estate Corp.</u>, 283 A.D.2d 44, 50 (App. Div. 1st Dep't 2001) ("Given the nationwide scope of [the insured's] operations, the principal location of the insured risk should be deemed to be the state where Sentinel is incorporated and has its principal place of business, from which it negotiated the special terms of the Policy, and where the Policy presumably was delivered to it (thus constituting the state where the contract was made)."). Accordingly, the Court finds that New York is the "principal location of the insured risk."

---

[2] "[D]iscovered" is a defined term in the Policy, meaning "the time when [Plaintiff] first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known." Policy at 12.

a.  Whether Condition 'm' is Valid

Plaintiff argues that condition 'm' of the Policy, requiring legal actions to be brought against Defendant within two years of loss discovery, is unenforceable because it is unreasonable and nullifies policy coverage. See Resp. at 12.

"It is well-settled that the parties to a contract may provide for a shorter limitation to actions thereon than that fixed by the general law." Wilkinson v. First Nat'l Fire Ins. Co., 72 N.Y. 499, 501–02 (1878); see also N.Y. C.P.L.R. § 201 ("An action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement."). However, the contractual limitations period must be "reasonable." John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 551 (1979). "[T]here is nothing inherently unreasonable about a two-year period of limitation." Executive Plaza, LLC v. Peerless Ins. Co., 22 N.Y.3d 511, 518 (2014).

Plaintiff relies on Executive Plaza, but that case is easily distinguishable. There, the policy required the insured to replace its lost or damage property prior to being reimbursed for its replacement costs. Id. at 516. On certification from the Second Circuit, the New York Court of Appeals assumed, as required by the certified question, that the insured's property could not have been replaced within two years, the time in which the insured was required to bring suit under the policy. Id. at 518. Therefore, the state court held that "in a case where the property cannot reasonably be replaced in two years, the two-year contractual limitation period is 'unreasonable and unenforceable.'" Executive Plaza, LLC v. Peerless Ins. Co., 745 F.3d 615, 616 (2d Cir. 2014) (per curiam) (quoting Executive Plaza, 22 N.Y.3d at 516).

Here, on the other hand, there was no complete obstacle to Plaintiff's initiation of a

legal action within the two-year period. The Policy gives Plaintiff 120 days to submit a

"detailed, sworn proof of loss[.]" Policy at 7. It states that Plaintiff may not bring suit unless it

has "complied with all the terms of this policy" and until "90 days after [it has] filed proof of

loss[.]" Id. at 9. Even assuming Plaintiff took the maximum amount of time to submit proof of

loss, it could still bring suit seven months after loss discovery. Plaintiff argues that it never

received notice from Defendant of its compliance "with all the terms of this policy," Resp. at

10; but the prerequisite to suit under the Policy is Plaintiff's compliance, not notification from

Defendant.

Plaintiff alleges Defendant "insisted upon further information to be provided and

required the insured to submit to Examinations Under Oath." Id.; see also Compl. ¶¶ 38–39.

Because "terms of th[e] Policy" required Plaintiff to cooperate and submit to such

examinations, see Policy at 7, Plaintiff was not permitted to sue under the agreement before

engaging with Defendant's investigative process. But on January 24, 2017, Defendant allegedly

denied Plaintiff's claim. See Compl. ¶ 26. At that point, based on the January 2016 theft

discovery, Plaintiff still had a year in which to bring suit.

Plaintiff also cites Steen v. Niagara Fire Ins. Co., a case addressing the question of

when a contractual limitations period begins to run. See 89 N.Y. 315 (1882); Resp. at 10. The

Steen policy required claims to be brought within a "term of twelve months next after the loss

or damage shall occur[.]" Id. at 321. Steen held that "generic language setting a contractual

limitations period should be interpreted to start the clock not at the time of the accident itself

but only once 'the right to bring an action exists' — that is, once all conditions precedent have

been met." Fabozzi v. Lexington Ins. Co., 601 F.3d 88, 91 (2d Cir. 2010) (quoting Steen, 89

N.Y. at 323). If <u>Steen</u> applies, then, the two-year timer did not start until Plaintiff "complied with all the terms" of the Policy as required. But the language used in the Policy's limitation clause is specific, not "generic," tying the limitations period to discovery of the loss. <u>See</u> Policy at 9. The Policy defines discovery. <u>See</u> <u>supra</u> n.2. The Court will give effect to this "exceptionally clear language." <u>Fabozzi</u>, 601 F.3d at 91; <u>see also</u> <u>Steen</u>, 89 N.Y. at 324 ("No doubt the appellant could have stipulated that the time of the fire should be looked to as the event, from the happening of which the limitation should run, but it would require distinct language to show that such was the intention of the parties.").

This case is analogous to <u>Ventilla v. Pac. Indem. Co.</u>, in which a court in this Circuit found a claim time-barred under New York law and granted summary judgment to a defendant-insurer. No. 19-CV-1134, 2020 U.S. Dist. LEXIS 120669 (S.D.N.Y. July 9, 2020). Like here, the policy in <u>Ventilla</u> required the insured to comply with all of the contract's conditions prior to bringing suit. <u>Id.</u> at *6. One such condition was the insured's participation in examinations under oath. <u>Id.</u> at *7. The court found that all of the conditions "could, with reasonable diligence, have been completed within two years" of the loss. <u>Id.</u>

In sum, condition 'm' of the Policy is enforceable under New York law. Plaintiff could have "protect[ed] itself by either beginning an action before expiration of the limitation period or obtaining from the carrier a waiver or extension of its provision." <u>Blitman Constr. Corp. v. Insurance Co. of North America</u>, 66 N.Y.2d 820, 822 (1985). Because Plaintiff did not initiate suit until 2020, more than four years after loss discovery, its breach of contract claim is barred by the agreed-upon two-year limitations period.

### b.  Whether Waiver or Estoppel Applies

Plaintiff can demonstrate neither waiver nor estoppel. "In order to establish a waiver of a 'time for suit clause,' the plaintiff must offer evidence from which the defendant's intent to relinquish the protection of the contractual limitations period can be reasonably inferred." Satyam Imports, Inc. v. Underwriters at Lloyd's Via Marsh, S.A., No. 03-CV-4387, 2003 U.S. Dist. LEXIS 18350, at *5 (S.D.N.Y. Oct. 9, 2003) (citing Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 968 (1988)). Waiver "should not be lightly presumed." Gilbert Frank Corp., 70 N.Y.2d at 968. "Mere investigation of a claim pursuant to an insurance contract is a insufficient predicate upon which to permit an inference of waiver of a contractual limitations period." Issa v. Reliance Ins. Co., 683 F. Supp. 82, 83 (S.D.N.Y. 1988).

"To invoke estoppel, a plaintiff must demonstrate that he was misled or lulled by the defendant into failing to file a claim in a timely manner." Penna v. Peerless Ins. Co., 510 F. Supp. 2d 199, 205 (W.D.N.Y. Sept. 24, 2007).

In arguing for the application of these doctrines, Plaintiff asserts it "was operating . . . under the belief that its claim would be reevaluated if [it] obtained a judgment [against El Baroudi in the Canadian lawsuit]." Resp. at 14; see also Compl. ¶ 36 ("Based on the findings and decision in the Canadian Action and in reliance upon [Defendant's] representation that it would consider new information if it came to light, [Plaintiff] submitted a second claim for indemnification" on October 25, 2019.).

Satyam Imports is instructive. There, a court in this Circuit rejected a plaintiff's waiver and estoppel argument and granted a defendant's motion to dismiss on contractual limitations grounds. Satyam Imports, Inc., 2003 U.S. Dist. LEXIS 18350, at *5. The Satyam Imports

14

plaintiff's arguments were based on investigative steps taken by the insurer both before and after the expiration of the limitations period. Id. at *5–6.

Like in Satyam Imports, Plaintiff here has not alleged any conduct by Defendant "that would mislead a reasonable insured, which was represented at the relevant time by counsel, about the need to bring an action within the contractual period to protect its rights." Satyam Imports, Inc., 2003 U.S. Dist. LEXIS 18350, at *6–7. Though Defendant allegedly "claimed that it remained available to consider any additional information should new information come to light," Compl. ¶ 35, Plaintiff does not allege that Defendant "said or did anything to indicate that it would not assert the limitations defense," Satyam Imports, Inc., 2003 U.S. Dist. LEXIS 18350, at *8. "It was therefore incumbent on [P]laintiff to take timely action to protect its rights." Id. In sum, neither waiver nor estoppel can save Plaintiff from the application of condition 'm.'

### 3.  Breach of Implied Covenant of Good Faith and Fair Dealing[3]

---

[3]  Defendant argues that where a contractual limitations period bars a breach of contract claim, a claim for breach of the implied covenant of good faith and fair dealing is also time-barred. See Reply at 11 (citing Schunk v. New York Cent. Mut. Fire Ins. Co., 237 A.D.2d 913, 915 (4th Dep't 1997). The Court is not "strictly bound by state intermediate appellate courts," though their opinions have force unless "persuasive data [indicates] that the highest court of the state would decide otherwise." DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005). And such "persuasive data" is present here. The Policy bars only "any legal action against [Defendant] *involving loss*" not brought within two years of discovery. Policy at 9 (emphasis added). The question, then, is whether the breach of implied covenant claim involves "loss," an ambiguous term that is not defined by the Policy. See Geico Marine Ins. Co. v. Mandel, No. 19-CV-3107, 2020 U.S. Dist. LEXIS 174000, at *25 (E.D.N.Y. Sept. 18, 2020) ("While 'loss' is frequently used throughout the [policies] in various contexts, these uses still render the meaning ambiguous."). The Court finds that the breach of implied covenant claim involves Defendant's conduct, not Plaintiff's loss—albeit conduct that only manifested because Plaintiff claimed a loss. See Compl. ¶ 55 (alleging Defendant violated the implied covenant by "mishandling the claim," "delaying payment of the claim," and "claiming without basis in fact that [Plaintiff] intentionally misrepresented and concealed material facts"). This finding comports with New York Court of Appeals precedent, which "establishes that

Plaintiff alleges that Defendant violated the implied covenant of good faith and fair dealing by "deliberately, carelessly and wrongfully": (1) mishandling Plaintiff's claim; (2) delaying payment of the claim; and (3) claiming baselessly that Plaintiff intentionally misrepresented and concealed material facts. See Compl. ¶ 55. Defendant argues that this claim must be dismissed as duplicative of Plaintiff's claim for breach of contract. See Mot. at 24.

"Under New York law, there is a covenant of good faith and fair dealing implied in all contracts." Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 298 (S.D.N.Y. 2012). But "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2012). "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997). But "[w]here the breach of the implied covenant of good faith and fair dealing claim rests on a different set of supporting facts from the express breach of contract claim, it should be allowed to survive at the Rule 12(b)(6) stage." Endemann v. Liberty Ins. Corp. 390 F. Supp. 3d 362, 378–79 (N.D.N.Y. 2019).

Plaintiff relies upon Endemann to support its argument that this claim may proceed. There, a court in this District found that a breach of implied covenant claim was based on different facts than the breach of contract claim. See id. at 379. The implied covenant cause of

---

ambiguities in an insurance policy should be construed in favor of the insured and against the insurer[.]" Mostow v. State Farm Ins. Co., 88 N.Y.2d 321, 326 (1996). Therefore, the Court finds that the state's highest court would hold that only the breach of contract claim is time-barred.

action was based on separate allegations that the defendant "unreasonably, maliciously, recklessly, or intentionally den[ied] its obligations to pay benefits to Plaintiff when it knew or should have known it had an obligation to provide insurance coverage" and other conduct in connection with plaintiff's claim. Id. The claim therefore survived dismissal. Id.

Likewise, Plaintiff's claim for breach of the implied covenant is not "based upon the same facts" as its claim for breach of contract. The breach of contract claim was based on Defendant's alleged failure and refusal to pay Plaintiff's claim related to El Baroudi's theft. See Compl. ¶ 49. The facts relevant to that claim, were it not time-barred, would be whether Plaintiff suffered a compensable loss under the Policy and whether Defendant failed to meet its obligations. Plaintiff's breach of implied covenant cause of action, on the other hand, is based on Defendant's alleged mishandling and delayed payment of Plaintiff's claim, as well as Defendant's assertion that Plaintiff made misrepresentations. See id. ¶ 55. Facts relevant to whether Defendant breached the implied covenant include what Defendant did, and what Plaintiff said, during Defendant's investigation of Plaintiff's claim. By allegedly asserting baselessly that Plaintiff made misrepresentations, Defendant engaged in different conduct than that relevant to whether it breached the Policy by failing to cover Plaintiff's loss. The breach of contract claim is based not on what Defendant did, bur rather on what it did not do. See Compl. ¶ 49 (alleging Defendant "breached the contract by failing and refusing to pay [Plaintiff's] claim").

Because the two claims rely upon different facts, Plaintiff's breach of implied covenant claim is not duplicative of its breach of contract claim. It therefore survives dismissal.

### 3. *Violation of GBL § 349*

Defendant next argues that Plaintiff has failed to state a claim for relief under GBL § 349. The Court agrees and dismisses this claim.

"To successfully assert a claim under General Business Law § 349(h), 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Jeffrey's Auto Body, 2020 U.S. Dist. LEXIS 221011, at *20 (quoting City of New York v. Smokes-Spirits.Com, Inc., 12 N.Y.3d 616, 621 (N.Y. 2009)). Plaintiff's claim fails on the first element.

"Private contract disputes . . . [do] not fall within the ambit of the statute." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995). "[A] plaintiff must show that the impact of the alleged deceptive practices extends beyond the parties involved and 'must demonstrate that the acts or practices have a broader impact on consumers at large.'" McLean-Laprade v. HSBC, No. 12-CV-1774, 2013 U.S. Dist. LEXIS 106122, at *16 (N.D.N.Y. July 30, 2013) (Kahn, J.) (quoting Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 25).

Plaintiff again relies on Endemann, where the court found that a GBL § 349 claim survived a motion to dismiss. 390 F. Supp. 3d at 380. The Endemann complaint alleged that the insurance policy was "designed and intended by Defendant to be purchased by the public at large in the State of New York." Id. The plaintiff also alleged that the policy's forms "are consumer-oriented in that they are offered and are available to consumers at large, and are regularly used by Defendant in the inducement of individual consumers in the market for

homeowners' insurance coverage." Id.

Here, Plaintiff alleges that the relationship between it and Defendant "is consumer-oriented in that Hanover sold and Sportsinsurance purchased a policy of insurance." Compl. ¶ 60. But this suggests nothing more than a "private contract dispute[]," which the New York Court of Appeals has indicated falls outside of § 349's purview. Oswego Laborers' Local 214 Pension Fund, 390 F. Supp. 3d at 25.

In opposing dismissal, Plaintiff argues "Defendant has a standard or routine practice of failing to 'have reasonable standards to effectuate prompt, fair and equitable settlement of its policyholder's claims as demonstrated by its failure to promptly, fairly and equitably investigate and resolve Sportsinsurance's claim.'" Resp. at 18 (quoting Compl. ¶ 62). But these allegations relate only to a single policyholder: Plaintiff. They also come too late. See, e.g., Nicosia v. Town of Hempstead, No. 16-CV-1176, 2017 U.S. Dist. LEXIS 92528, at *14 (E.D.N.Y. June 14, 2017) ("[A] non-moving party cannot overcome a motion to dismiss simply by asserting new facts or theories for the first time in its opposition."), report and recommendation adopted by, 2017 U.S. Dist. LEXIS 138924 (E.D.N.Y. Aug. 28, 2017).

Because the Complaint fails to state a claim for relief under GBL § 349, that claim is dismissed.

### 4. Damages

#### a. Punitive Damages

Plaintiff seeks punitive damages on its breach of implied covenant claim. See Compl. at 13. Again, Plaintiff cites Endemann, but on this issue that case undermines Plaintiff's argument.

19

In Endemann, the court held that, because the plaintiff had not alleged an independent claim for fraud or another tort, punitive damages were not available under New York law. 390 F. Supp.3d at 381–82. The complaint in that case did not "specifically allege a claim for fraud or [an]other independent tort." Id. at 381. The complaint used "familiar tort language," such as allegations that the defendant acted "unreasonably, maliciously, recklessly, or intentionally," but the court found that insufficient to plead an independent tort claim. Id.

Here, the Complaint does not "specifically allege" an independent tort and uses similar language to that which was rejected in Endemann. See Compl. ¶ 55 (alleging, in connection with Plaintiff's breach of implied covenant claim, that Defendant acted "deliberately, carelessly and wrongfully"). Punitive damages are therefore not available to Plaintiff.

### b.  Special and Incidental Damages and Attorneys' Fees

Plaintiff seeks special and incidental damages in connection with its surviving breach of implied covenant claim. See Compl. at 13. The parties agree that consequential damages are interchangeable with special and incidental damages. See Mot. at 28 n.5; Resp. at 20 n.1. Defendant argues the Complaint does not contain a basis for consequential damages or attorneys' fees. See Mot. at 28.

A plaintiff "may be entitled to consequential damages if he prevails on his breach of the covenant of good faith and fair dealing claim." Endemann, 390 F. Supp. 3d at 381. The Court declines to dismiss Plaintiff's request for consequential damages at this early stage.

Finally, "[u]nder certain circumstances, attorneys' fees may be a component of consequential damages." Id. (citing Whiteface Real Estate Dev. & Const., LLC v. Selective Ins. Co. of Am., No. 08-CV-24, 2010 U.S. Dist. LEXIS 59741, at *5 (N.D.N.Y. June 16, 2010)).

Therefore, the Motion is also denied to the extent it seeks dismissal of Plaintiff's claim for attorneys' fees.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 5) is **GRANTED in part and DENIED in part**. Plaintiff's breach of contract and GBL § 349 claims are **DISMISSED**. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing may proceed; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       March 01, 2021
             Albany, New York

Lawrence E. Kahn
U.S. District Judge