UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

SPORTSINSURANCE.COM, INC.,

                      Plaintiff,

  -against-                                    8:20-CV-0403 (LEK/DJS)

THE HANOVER INSURANCE
COMPANY, INC.,

                      Defendant.
───────────────────────────────────────

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Sportsinsurance.com, Inc. brings this action against Defendant The Hanover Insurance Company, Inc. Dkt. No. 2 ("Complaint"). In the Complaint, Plaintiff asserted the following causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; and (3) violation of New York General Business Law ("GBL") § 349. Id. at 10–12. Plaintiff also seeks declaratory judgment. Id. at 13. On March 1, 2021, the Court granted in part and denied in part Defendant's motion to dismiss. See Dkt. No. 14 ("Order").

Now before the Court is Defendant's motion for reconsideration of the Order. See Dkt. No. 16 ("Motion"). In the alternative, Defendant seeks certification of the Order for interlocutory appeal. See Mot. at 21–22. Plaintiff opposes reconsideration and requests that, should the Court certify any part of the Order for interlocutory appeal, it should certify the entire Order—including the portion finding Plaintiff's breach of contract claim barred by the contractual limitations clause. See Dkt. No. 17 ("Opposition"). At the Court's invitation, Defendant filed a reply limited to the issue of whether certification of the entire Order is appropriate. See Dkt. No. 20 ("Reply").

For the reasons discussed below, the Court denies reconsideration but amends the Order to certify it for interlocutory appeal.

## II.   BACKGROUND

### A.  Factual History

Plaintiff's factual allegations are summarized in the Order, familiarity with which is assumed. See Order at 2–3. In brief, this dispute between two insurance companies centers around Defendant's obligations under a commercial crime insurance policy it issued Plaintiff, following Plaintiff's January 2016 discovery of embezzlement by an employee. See generally Dkt. No. 5-2 (the "Policy"); see also Order at 2–3.

### B.  Procedural History

On March 6, 2020, Plaintiff filed suit in the Supreme Court of New York, Essex County. See Dkt. No. 1-1 at 1–2. Defendant removed the case to this Court on April 6, 2020. See generally id. On April 13, 2020, Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See generally Dkt. No. 5-9. The Court granted the motion to dismiss in part and denied it in part on March 1, 2021, dismissing Plaintiff's claims for breach of contract and violation of GBL § 349 but not its claim for breach of the implied covenant of good faith and fair dealing. See generally Order. Defendant sought reconsideration on March 15, 2021. See generally Motion.

## III.  LEGAL STANDARD

"The standard for granting a motion for reconsideration is strict." Vidureic v. Cuomo, No. 18-CV-392, 2019 U.S. Dist. LEXIS 103804, at *2 (N.D.N.Y. June 21, 2019) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "A motion for reconsideration

should not be granted if the moving party 'seeks solely to relitigate an issue already decided.'" Id. at *2 (quoting Shrader, 70 F.3d at 257). "In this district, there are only three circumstances under which a court will grant a motion for reconsideration: '(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or prevent manifest injustice.'" Shaughnessy v. Garrett, No. 06-CV-103, 2011 U.S. Dist. LEXIS 35270, at *1–2 (N.D.N.Y. Mar. 31, 2011) (citing Taormina v. Int'l Bus. Machs. Corp., No. 04-CV-1508, 2006 U.S. Dist. LEXIS 90321, at *1–2 (N.D.N.Y. Dec. 14, 2006)).

## IV. DISCUSSION

### A. Reconsideration

Defendant argues that reconsideration is warranted because the Court committed clear error at several points in the Order. None of Defendant's grounds justify reconsideration.

*1. Whether the Breach of Implied Covenant Claim is Time-Barred*

First, Defendant argues that the Order should have found Plaintiff's claim for breach of the implied covenant of good faith and fair dealing time-barred for two reasons: (1) because such claims are necessarily time-barred where a contractual limitations provision bars a breach of contract claim; and (2) because the Policy's contractual limitations provision bars the claim. See Mot. at 10–13.

The Court addresses both arguments.

#### a. Effect of the Time-Barred Breach of Contract Claim

Defendant argues:

> There is substantial case law from the New York Court of Appeals, as well as multiple decisions by the New York Appellate Division, the U.S. Court of Appeals for the Second Circuit and other New

> York courts supporting [its] position that where, as here, a breach of contract claim is barred by a contractual limitation provision, the plaintiff cannot pursue a legal action for breach of the implied covenant of good faith and fair dealing because the latter is intrinsically tied to the former.

Mot. at 9.[1]

Specifically, Defendant points to two New York Supreme Court, Appellate Division decisions purportedly holding that plaintiffs may not pursue breach of implied covenant claims when contractual limitations clauses bar their claims for breach of contract. See Mot. at 11 (citing Smile Train, Inc. v. Ferris Consulting Corp., 117 A.D.3d 629 (N.Y. App. Div. 1st Dep't 2014) and Schunk v. New York Cent. Mut. Fire Ins. Co., 237 A.D.2d 913 (N.Y. App. Div. 4th Dep't 1997)). The Order did not commit clear error with regard to these cases for at least two reasons.

First, Smile Train, Inc. and Schunk are more properly read not as embracing a per se rule that an implied covenant claim can never survive a finding that a companion breach of contract claim is time-barred, but rather as mere applications of those cases' contractual limitations clauses. Put differently, the First and Fourth Departments likely dismissed the

---

[1] Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052 (2d Cir. 1992), is the sole Second Circuit case cited by Defendant in the section of its Motion that argues Plaintiff cannot maintain an implied covenant claim where a contractual limitations clause bars its claim for breach of contract. See Mot. at 10–12. The Second Circuit recognized in that case that a breach of the implied covenant "is merely a breach of the underlying contract." Fasolino Foods Co., 961 F.2d at 1056 (quoting Geler v. National Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)). But Fasolino Foods Co. merely held that no breach of implied covenant claim can lie where there is no underlying contract. See Fasolino Foods Co., 961 F.2d at 1056; see also United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 64 n.25 (2d Cir. 2004) (noting in parenthetical that the implied covenant claim in Fasolino Foods Co. was precluded "only because there was not an express agreement between the parties"). That case, then, does not "support[] [Defendant's] position" regarding the impact of a time-barred breach of contract claim on an implied covenant claim.

breach of implied covenant claims because the text of the contractual limitations provisions those courts were applying was sufficiently broad to capture those claims as well as the breach of contract claims.[2] And, as discussed infra, the language of the contractual limitations clause that this Court is confronted with does not encapsulate Plaintiff's implied covenant claim.

Second, even if Smile Train, Inc. and Schunk could be read as preventing *any* claims for breach of the implied covenant where a contractual limitations clause bars a claim for breach of contract, the Court again notes it is not "strictly bound by state intermediate appellate courts" where persuasive data indicates "that the highest court of the state would decide otherwise." Order at 15 n.3 (quoting DiBella v. Hopkins, 403 F.3d 102, 112 (2d Cir. 2005)). As will be discussed, such persuasive data is present here. See infra n.7.

Defendant also cites Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 (1983), and Sheth v. New York Life Ins. Co., 273 A.D.2d 72 (1st Dep't 2000). See Mot. at 11. However, those cases held only that an employer does not violate the implied covenant when it terminates an at-will employee. See Murphy, 58 N.Y.2d at 304–05 ("In the context of such an [at-will] employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination."); Sheth,

---

[2] These courts appear to have simply applied the contractual limitations clauses. See Smile Train, Inc., 117 A.D.3d at 630 ("We also disagree with plaintiff's contention that section 18," the contractual limitations provision, "does not apply to its claim for breach of the implied covenant of good faith and fair dealing."); Schunk, 237 A.D.2d at 915 ("Because the limitations period had expired, the cause of action based upon breach of the implied covenant of good faith and fair dealing is similarly time-barred."). Another case relied upon by Defendant, Maniello v. State Farm Fire & Cas. Co., was also a rigid application of a contractual limitations clause. No. 16-CV-1598, 2017 U.S. Dist. LEXIS 16450, at *10 (E.D.N.Y. Feb. 6, 2017) ("Furthermore, any claims for breach of this implicit covenant are barred by the same contractual statute of limitations as plaintiff's contract claims.").

273 A.D.2d at 73 (quoting Murphy, 58 N.Y.2d at 304–05).³

Defendant writes that it "is unaware of *any* case where a New York court allowed a claim for breach of implied covenant of good faith and fair dealing to continue where the breach of contract claim was time barred." Mot. at 12 (emphasis in original). But the Court does not see itself as on an island. See, e.g., Endemann v. Liberty Ins. Corp., No. 18-CV-701, 2020 U.S. Dist. LEXIS 153976, at *8 (N.D.N.Y. Aug. 25, 2020) (denying dismissal of implied covenant claim where contractual limitations provision prevented breach of contract claim); Geico Marine Ins. Co. v. Mandel, No. 19-CV-3107, 2020 U.S. Dist. LEXIS 174000, at *28–32 (E.D.N.Y. Sept. 18, 2020) (finding counterclaim for breach of contract, but not separate counterclaim for breach of implied covenant, barred by limitations clause), report and recommendation adopted by 2020 U.S. Dist. LEXIS 185735 (E.D.N.Y. Oct. 7, 2020); Austin v. Gould, 2014 N.Y. Misc. LEXIS 3082, at *28 (Sup. Ct. 2014) (allowing claim for breach of implied covenant of good faith and fair dealing to partially proceed where breach of contract claim was time barred).

In sum, Defendant is not entitled to reconsideration of the Court's holding that a claim for breach of the implied covenant is not necessarily disallowed simply because a party also

---

³ Sheth held that an implied covenant claim "may not be used as a substitute for a nonviable claim of breach of contract." Sheth, 273 A.D.2d at 73. Claims and defenses are occasionally spoken of as either "viable" or "nonviable" depending on whether they are barred by a statute of limitations. See, e.g., Los Lunas Pub. Schs. Bd. of Educ. v. Jose & Patricia Aragon, No. 03-CV-299, 2017 U.S. Dist. LEXIS 115936, at *8 n.1 ("Plaintiffs' IDEA claims . . . are likewise viable and not barred by the two-year statute of limitations."); Wilshire Credit Corp. v. Ghostlaw, 300 A.D.2d 971, 972 (3rd Dep't 2002) ("Supreme Court denied both parties' motions, holding that . . . defendants' reformation defense was viable and not barred by the statute of limitations."). But Sheth does not appear to have involved a limitations provision. That case is therefore not instructive in this dispute regarding the effect of such a provision.

pled a time-barred breach of contract claim. Defendant points to no decision—let alone one binding upon this Court—holding categorically that implied covenant claims cannot be maintained where a limitations clause bars a separately pled breach of contract claim; it was not clear error for this Court to refuse to announce such a rule.

### b. The Text of the Policy

Having established that no rule prevents a claimant possessing a time-barred breach of contract claim from ever proceeding on a breach of implied covenant theory, the Court turns to the text of the Policy to see whether *it* bars Plaintiff's implied covenant claim—or, more precisely, whether the Court committed clear error when it found it does not. Reconsideration is denied on these grounds, as well.

According to the Policy,

> [Plaintiff] may not bring any legal action against [Defendant] involving loss: (1) Unless [Plaintiff has] complied with all the terms of this policy; (2) Until 90 days after [Plaintiff has] filed proof of loss with [Defendant]; and (3) Unless brought within 2 years from the date [Plaintiff] "discovered" the loss.

Policy at 9.[4]

The Order found that Plaintiff's breach of implied covenant claim was not barred by the text of the Policy, stating:

> The Policy bars only "any legal action against [Defendant] *involving loss*" not brought within two years of discovery. Policy at 9 (emphasis added). The question, then, is whether the breach of

---

[4] The Sixth Circuit confronted a virtually identical contractual limitations provision in Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 544 (6th Cir. 1996). The court affirmed the dismissal of plaintiff-appellant's implied covenant claim, though not on the grounds that it "involv[ed] loss" and was therefore barred by the limitations clause. See id. at 546. That question was apparently not litigated.

> implied covenant claim involves "loss," an ambiguous term that is not defined by the Policy. See Geico Marine Ins. Co. v. Mandel, No. 19-CV-3107, 2020 U.S. Dist. LEXIS 174000, at *25 (E.D.N.Y. Sept. 18, 2020) ("While 'loss' is frequently used throughout the [policies] in various contexts, these uses still render the meaning ambiguous."). The Court finds that the breach of implied covenant claim involves Defendant's conduct, not Plaintiff's loss—albeit conduct that only manifested because Plaintiff claimed a loss. See Compl. ¶ 55 (alleging Defendant violated the implied covenant by "mishandling the claim," "delaying payment of the claim," and "claiming without basis in fact that [Plaintiff] intentionally misrepresented and concealed material facts"). This finding comports with New York Court of Appeals precedent, which "establishes that ambiguities in an insurance policy should be construed in favor of the insured and against the insurer[.]" Mostow v. State Farm Ins. Co., 88 N.Y.2d 321, 326 (1996). Therefore, the Court finds that the state's highest court would hold that only the breach of contract claim is time-barred.

Order at 15 n.3.

Defendant alleges that this portion of the Court's analysis was erroneous in two ways. First, the limitations clause applies to Plaintiff's implied covenant claim, according to Defendant, because that claim "involv[es] loss." See Mot. at 12–16. Second, Defendant argues the term "loss" is not ambiguous and therefore the Court should not have construed the limitations clause in favor of Plaintiff, the insured. See id. The Court will address both arguments.

*i. Whether the Implied Covenant Claim Involves "Loss"*

Defendant argues that "the Court's finding that the Contractual Limitation Clause does not apply to the Breach of Implied Covenant Claim is clear error as that claim, like the Breach of Contract Claim, clearly 'involves loss.'" Mot. at 12–13. The Court disagrees and therefore finds the limitations clause inapplicable to the implied covenant claim.

Plaintiff's implied covenant cause of action is predicated on three allegations: (1) that Defendant mishandled Plaintiff's insurance claim; (2) that Defendant delayed payment of the claim; and (3) that Defendant asserted "without basis in fact that [Plaintiff] intentionally misrepresented and concealed material facts." See Compl. ¶ 55.[5]

The only relevant "loss" suffered by Plaintiff is the alleged embezzlement of $250,036.30 CAD committed by Chief Financial Officer Kenza El Baroudi. Plaintiff's claim for breach of contract, which the Order found time-barred, involved this loss because it was based on Defendant's failure to pay Plaintiff's related claim. See Compl. ¶ 49. But the Court did not commit clear error when it found that Plaintiff's implied covenant claim—dealing with Defendant's conduct in connection with its investigation of Plaintiff's claim—does not involve[6] "loss," or in other words, El Baroudi's embezzlement.

---

[5] Defendant notes that Plaintiff's breach of contract and implied covenant causes of action are both based upon Defendant's failure to pay Plaintiff's insurance claim. See Mot. at 12 n.3. "Therefore," Defendant argues, "it cannot be disputed that both causes of action involve loss, and this lawsuit is clearly a 'legal action . . . involving loss.'" Id. This argument ignores that the implied covenant claim is only partially based upon Defendant's failure to approve the insurance claim; it is also based upon Defendant's allegedly baseless assertion that Plaintiff "intentionally misrepresented and concealed material facts." See Compl. ¶ 55. An implied covenant claim can overcome dismissal on the strength of only some of its allegations. See Austin, 2014 N.Y. Misc. LEXIS 3082, at *27–28 ("To the extent that this cause of action attempts to recover the Acquisition Fees and Equity Management Fees, it is dismissed as duplicative of the breach of contract cause of action. However, the remaining allegations state a claim breach of the implied covenant of good faith and fair dealing.").

[6] Defendant asserts that the "Second Circuit has recognized that the term 'involving' has 'expansive connotations' when used in a contract or statute." Mot. at 14 (citing United States v. King, 325 F.3d 110, 113 (2d Cir. 2003)). But King did not involve a contract. See King, 325 F.3d at 113 (interpreting 18 U.S.C. § 924(e)(2)). It is unclear whether the Second Circuit would read "involving" so expansively in this context, particularly in light of New York Court of Appeals precedent requiring contractual ambiguities to be construed in favor of the insured. See Mostow v. State Farm Ins. Co., 88 N.Y.2d 321, 326 (1996).

The Court finds no clear error in its determination that Plaintiff's implied covenant claim does not involve "loss" and is therefore not subject to the contractual limitations clause.

### ii. Whether "Loss" is Ambiguous

The Court also finds no clear error in its determination that the term "loss" is ambiguous and thus must be construed in Plaintiff's favor under New York Court of Appeals precedent. See Mostow, 88 N.Y.2d at 326 ("Given that our precedent establishes that ambiguities in an insurance policy should be construed in favor of the insured and against the insurer, the drafter of the policy language, the construction favoring petitioner in this case, afforded by a fair interpretation of the policy, prevails.") (citations omitted).[7] Far from committing clear error, this Court simply joined another in this Circuit in finding that "loss" is ambiguous when undefined by an insurance policy. See Geico Marine Ins. Co. v. Mandel, 2020 U.S. Dist. LEXIS 174000, at *25.[8]

---

[7] In light of this "persuasive data" on how the New York Court of Appeals would decide this case, see DiBella, 403 F.3d at 112, this Court need not follow Smile Train, Inc. and Schunk—even if Defendant's strained reading of those cases is the correct one.

[8] Defendant points out that, unlike Mandel, this case does not involve a dispute over when the limitations period began. See Mot. at 13 n.4. While the Mandel court grappled with the meaning of "loss" in assessing when the limitations period began, this Court does so in deciding whether the facts underlying the implied covenant claim make it of the type that must be brought within the time prescribed by the Policy. Compare Mandel, 2020 U.S. Dist. LEXIS 174000, at *22 (noting the policy required that an "action must begin within one year of the *date of loss or damage*") (emphasis in original) with Policy at 9 ("You may not bring any legal action against us involving loss . . . [u]nless brought within 2 years[.]"). In analyzing the meaning of "loss," though, the court in Mandel examined the policy's use of that term in other contexts, too—including provisions bearing on whether certain occurrences constitute "loss." See Mandel, 2020 U.S. Dist. LEXIS 174000, at *26 ("This provision indicates that the term 'loss' encompasses not only 'loss to the insured boat' (*i.e.*, property damage to the insured boat) but other loss sustained by the Defendant. Therefore, 'loss' encompasses a broader meaning which was not defined by the Yacht Policies."). Thus, that court, like this one, considered whether "loss" is ambiguous when used in reference to events. And that court, like this one, decided that it is. See id. It is irrelevant, then, that

As noted by the Second Circuit, "contract terms are ambiguous if they are 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996)).

"Loss" could conceivably mean either "the occurrence for which the insured seeks coverage"—here, the embezzlement—or "the occurrence for which the insured seeks coverage and any events that occur as a result and cause damage to the insured." In the former instance, the Court would hold that the implied covenant claim does not meet the definition and therefore could be brought. In the latter instance, the Court would hold that the contractual limitations clause bars the claim. The Court need not choose between these or any definitions. It finds only that "loss" is ambiguous as used in the Policy and construes that ambiguity in Plaintiff's favor.

In arguing that the Court committed clear error in finding "loss" ambiguous, Defendant relies upon two cases using that term in the context of a contractual limitations clause. See Mot. at 13 (citing Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am., 739 Fed. App'x 41 (2d Cir. 2018) and Myers, Smith & Granady v. New York Property Ins. Underwriting Ass'n, 85 N.Y.2d 832 (N.Y. 1995)). However, those clauses required claims to be brought within two years of "the date on which the direct physical loss or damage occurred." See Classic Laundry & Linen Corp., 739 Fed. App'x at 42–43; Fabozzi v. Lexington Ins. Co., 601 F.3d 88, 92 (2d

---

this case does not involve an ambiguity in when the limitations period began. It involves a dispute over the meaning of "loss," a term a court in this Circuit has persuasively found ambiguous when undefined.

Cir. 2010) (noting that the policy in Myers, Smith & Granady used that phrase). The Second Circuit has referred to this language as "unambiguous," Classic Laundry & Linen Corp., 739 Fed. App'x at 42, and "highly specific," Fabozzi, 601 F.3d at 92. But those cases are distinguishable from this one, where the limitations clause bars only claims "involving loss" not brought within two years. See Policy at 9.

While the Order referred to part of the limitations clause as "exceptionally clear," see Order at 13 (quoting Fabozzi, 601 F.3d at 91), that portion of the clause tied the triggering of the limitations period to the date upon which the insured "discovered" its loss, see Policy at 9. "Discovered" is defined by the Policy; "loss" is not. See generally id.

In sum, Defendant has not established that the Court committed clear error in finding that "loss" is ambiguous as used in the Policy and that the ambiguity must be resolved in favor of the insured.

*2. Whether the Breach of Implied Covenant Claim is Duplicative*

Finally, Defendant argues that the Court should have dismissed the implied covenant claim as duplicative of the breach of contract claim. See Mot. at 18–21.

"A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976. F. Supp. 234, 243–44 (S.D.N.Y. 1997). But "[w]here the breach of the implied covenant of good faith and fair dealing claim rests on a different set of supporting facts from the express breach of contract claim, it should be allowed to survive at the Rule 12(b)(6) stage." Endemann v. Liberty Ins. Corp. 390 F. Supp. 3d 362, 378–79 (N.D.N.Y. 2019).

In its implied covenant claim, Plaintiff "pleads conduct by Defendant different than alleged in the breach of contract claim[.]" Id. at 379. Specifically, while the express claim was based on Defendant's refusal to reimburse Plaintiff, the implied claim is based on Defendant's assertion that Plaintiff made misrepresentations in connection with its proof of loss. Compare Compl. ¶ 49 with id. ¶ 55. "Facts relevant to whether Defendant breached the implied covenant include what Defendant did, and what Plaintiff said, during Defendant's investigation of Plaintiff's claim." Order at 17.

Under New York law, "[a]n insurance carrier has a duty to 'investigate in good faith and pay covered claims.'" Gutierrez v. Government Empls. Ins. Co., 136 A.D.3d 975, 976 (N.Y. App. Div. 2nd Dep't 2016) (quoting Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 195 (N.Y. 2008)). "Such a cause of action is not duplicative of a cause of action sounding in breach of contract to recover the amount of the claim." Id. at 977.

In conclusion, the Court does not find clear error in the portion of the Order that determined Plaintiff's implied covenant claim is not duplicative of its breach of contract claim.

### B.  Interlocutory Appeal

Defendant argues that, if the Court does not grant reconsideration, it should certify the portion of the Order that denied dismissal of the implied covenant claim for interlocutory appeal. In response, Plaintiff argues cursorily that, if any part of the Order is certified for interlocutory appeal, the Court should certify the entire Order—including the portion that granted dismissal of its breach of contract claim. See Resp. at 18. The Court will amend the

Order only to certify it for interlocutory appeal.[9]

"When a district judge . . . shall be of the opinion that [an] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).

### 1. Whether the Order Involves a Controlling Question of Law

The Court finds that the portion of the Order denying Defendant's motion to dismiss Plaintiff's breach of implied covenant claims "involves a controlling question of law[.]"[10] On interlocutory appeal, the Second Circuit has considered issues such as whether a claim exists as a matter of law and whether a party has a limitations defense. See Kam Shing Chan v. City of New York, 1 F.3d 96, 101 (2d Cir. 1993) (reviewing district court's denial of motion to dismiss); United Paperworkers Int'l Union & its Local 340 v. Specialty Paperboard, Inc., 999 F.2d 51, 51 (2d Cir. 1993) (reviewing district court's decision that claim was not time-barred). This requirement is therefore satisfied.

---

[9] At the Court's invitation, Defendant briefed the issue of whether the Court should also certify the portion of the Order that granted dismissal of Plaintiff's breach of contract claim, arguing it should not. See generally Reply. But when a court certifies an issue for interlocutory appeal, "the entire order is certified and [the Second Circuit] may assume jurisdiction over the entire order, not merely over the question as framed by the district court." City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 392 (2d Cir. 2008). Because it is sufficient that § 1292(b)'s requirements are met as they pertain to some issue presented by the Order, the Court amends the Order to certify it in its entirety for interlocutory appeal.

[10] Defendant argues that this requirement is met because dismissal of the implied covenant claim would "terminate the entire legal action." Mot. at 22. The Court notes that Plaintiff's claim for declaratory judgment has not been dismissed. See Compl. at 13. Regardless of whether the action would continue in the event of dismissal of Plaintiff's implied covenant claim, the Court finds that the issue involves a "controlling question of law."

*2. Whether There is Substantial Ground for Difference of Opinion*

"If the law is clear and there is no question that the district court's order is correct as a matter of law, there is no purpose in appealing the ruling." 19 MOORE'S FEDERAL PRACTICE - CIVIL § 203.31[4]. The Court cannot say that is the case here and thus finds this requirement met as well.

Defendant has pointed the Court to New York case law which it reads as holding that, where a claim for breach of contract is barred by a contractual limitations clause, a separately pled implied covenant claim is necessarily precluded. See supra IV(A)(1)(a); see also Mot. at 11 ("[T]he vast majority of New York courts have held that where a breach of contract claim is time barred due to a contractual limitation period, a claim for breach of the implied covenant of good faith and fair dealing is also time barred."). As discussed, the Court rejects Defendant's reading of Smile Train, Inc. and Schunk, as well as any contention that those cases are binding here.[11] But fair-minded jurists could reach another result.

*3. Whether Immediate Appeal May Materially Advance Termination*

The Court finds that immediate appeal may materially advance the termination of this lawsuit. "[A] court will require only that the appeal present a controlling question of law on an issue whose determination may materially advance the ultimate termination of the case." 19 MOORE'S FEDERAL PRACTICE - CIVIL § 203.31[3]. While Plaintiff also seeks declaratory judgment, see supra n.10, dismissal of Plaintiff's claim for breach of the implied covenant could lead to a faster resolution.

---

[11] Defendant stops short of arguing these cases bind the Court, saying only that district courts "routinely follow the opinions of New York intermediate appellate courts where there is no precedent directly on point from the New York Court of Appeals." Mot. at 16.

Having determined that § 1292(b)'s requirements are met, the Court amends the Order to certify it for interlocutory appeal.[12]

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 16) is **DENIED** to the extent it seeks reconsideration of this Court's March 1, 2021 Memorandum-Decision and Order (Dkt. No. 14). Defendant's Motion is **GRANTED** to the extent it seeks certification of the March 1, 2021 Memorandum-Decision and Order's denial of dismissal of Plaintiff's breach of implied covenant claim for interlocutory appeal; and it is further

**ORDERED**, that the March 1, 2021 Memorandum-Decision and Order is **AMENDED** to state that the issues contained therein are certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and it is further

**ORDERED**, that this Memorandum-Decision and Order is also certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 14, 2021
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[12] Because Defendant's Motion, which seeks reconsideration of the Order, involves the same issues, the Court certifies this Memorandum-Decision and Order for interlocutory appeal as well.